UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SUZANNE M. JAGODA,

            Plaintiff,

                                                              1:25-CV-860 (AJB/DJS)

        -v-

CITY OF SARATOGA SPRINGS,

            Defendants.
_____

**Hon. Anthony Brindisi, U.S. District Judge:**

## DECISION and ORDER

### I.    INTRODUCTION

On June 12, 2025, plaintiff Suzanne Jagoda ("plaintiff") filed this action in New York State Supreme Court, Saratoga County, against the City of Saratoga Springs (the "City"). Dkt. No. 2. Broadly, plaintiff claims that the City has been selectively enforcing its land use and development ordinance against her since May 2023. *Id.* ¶¶ 38–61.[1]

On July 1, 2025, the City removed plaintiff's state court action to this Court, pursuant to 28 U.S.C. § 1441(c), because plaintiff asserted a 42 U.S.C. § 1983 claim alongside her state law causes of action. Dkt. Nos. 1, 2. On July 7, 2025, the City answered plaintiff's complaint. Dkt. No. 5. Then, plaintiff moved to remand this action back to state court. Dkt. No. 9. The City opposed. Dkt. No. 10.

---

[1] The complaint is sequentially numbered by line. Accordingly, citations to the pleading correspond with that document's internal pagination.

Plaintiff's motion has been fully briefed, *see* Dkt. Nos. 10, 12, 16, 17,[2] and will be considered on the basis of the submissions, without oral argument.

## II.   BACKGROUND

Plaintiff is a resident of the City. Dkt. No. 2. ("Compl.") ¶ 2. Since 2005, plaintiff has owned and occupied real property located within a subdivision of the City (the "Property"). *Id.* ¶¶ 8–9. A map of the subdivision designates a section towards the back of the Property as a twenty-five-foot "Vegetative Buffer" (the "Buffer"). *Id.* ¶ 10. Tree removal is prohibited within the Buffer. *Id.* The map also designates a vegetative buffer area on the neighboring property, which is owned by Steven Tannenbaum ("Tannenbaum"). *Id.* As relevant here, plaintiff's relationship with Tannenbaum is fraught. *Id.* ¶ 35. According to plaintiff:

> Tannenbaum engaged in a pattern of harassment against [plaintiff], including: leaving a large television on the property line that exploded onto the . . . Property; leaving a dirty pizza box on [her] porch; threatening harm to [her] cats; blowing leaves from his property onto the . . . Property; [and] randomly cutting [her] shrubs.

*Id.*

In March 2023, a windstorm stripped the canopies off three trees on the Property, revealing extensive damage "from Oriental Bittersweet, . . . a thick invasive vine," recognized by the New York State Department of Environmental Conservation (the "NYSDEC") as an

---

[2] Upon plaintiff's consent, Dkt. No. 14 and with leave of Court, Dkt. Nos. 13, 15, the City filed a sur-reply. Dkt. No. 16. Afterwards, plaintiff filed a letter motion responding to the City's sur-reply—in essence, a "sur-sur-reply"—that included a contemporaneous request for leave to do so. Dkt. No. 17.

Under this District's Local Rules, "[u]nless the Court orders otherwise, . . . [a] surreply is not permitted." L.R. 7.1(a)(1). "To permit . . . reply papers to accompany [a] request [to file them] . . . is to enable the requesting party to accomplish its goal of placing the papers before the court, thereby reducing the question of whether the papers should be accepted for filing to relative unimportance." *U.S. v. Intl. Bus. Machs. Corp.*, 66 F.R.D. 383, 385 (S.D.N.Y. 1975).

Even so, "the Court has discretion to consider documents filed in violation of procedural rules." *Anghel v. New York State Dept. of Health*, 947 F. Supp. 2d 284, 293 (E.D.N.Y. 2013), *aff'd*, 589 Fed. Appx. 28 (2d Cir. 2015) (summary order). The Court exercises its discretion to consider plaintiff's "sur-sur-reply," but only to the extent that it directly responds to new matters raised in the City's sur-reply.

aggressive invasive species. Compl. ¶¶ 13–14.  Plaintiff soon discovered that Oriental Bittersweet had "wound itself into the bark of nearly 80 [percent]" of the trees on the Property, leaving several dead. *Id.* ¶ 13.  The infection had even spread to trees on neighboring lots, some of which the City owned. *Id.* ¶ 15.

In May 2023, concerned about the risk of falling tree limbs, plaintiff hired a tree removal service to remove any infected trees from the Property.  Compl. ¶ 17.  During the tree removal, Tannenbaum allegedly trespassed onto the Property and harassed the workers. *Id.* ¶ 36.  Plaintiff also alleges that, "[u]pon information and belief, Tannenbaum . . . contacted the City regarding [her] removal of dead trees, despite having removed trees from his own vegetative buffer years earlier without any enforcement action or repercussions from the City." *Id.* ¶ 37.

In July 2023, the City issued a notice of violation against plaintiff for violating § 11.1.C of the City's Uniform Development Ordinance ("UDO").  Compl. ¶¶ 38, 49.  That section provides, in relevant part:

1. Trees and vegetation, irrigation systems, fences, walls, and other landscape elements are considered elements of a development in the same manner as parking, building materials, and other site details. The applicant, developer, landowner, or successors in interest are jointly and severally responsible for the regular maintenance of all landscaping elements in good condition.

2. All landscaping must be maintained free from disease, pests, weeds, and litter . . .

3. Any landscape element that dies, or is otherwise removed or seriously damaged, must be removed and replaced within 30 days of the beginning of the growing season . . .

UDO § 11.9.C.1–3; *see also* Dkt. No. 9-3 at 142.

In response, plaintiff informed the City of the Oriental Bittersweet infestation. *Id.* ¶ 40. City code enforcement personnel declined to visit the property, so plaintiff submitted photographs of the infected trees to the City. *Id.*  Plaintiff received no response for three months,

despite making repeated follow-up calls.  *Id.* ¶ 41.  A senior forester from the NYSDEC examined the Property in August 2023 and confirmed the infestation.  *Id.* ¶ 20.

In October 2023, a City code enforcement officer finally reached out to plaintiff and "demanded that she submit a restoration plan within 30 days."  Compl. ¶ 41.  The officer also directed plaintiff to attend a City Planning Board meeting in January 2024.  *Id.* ¶ 42.  Plaintiff went to the meeting and waited to be heard for three hours before she was informed that the Planning Board did not handle "her type of issue."  *Id.*  She was told, instead, to contact Susan Barden, the City official who had previously declined to visit the Property.  *Id.*

Later in January 2024, Plaintiff met with Barden.  Compl. ¶ 43.  Barden instructed plaintiff to prepare and submit "'a scaled schematic with as much detail as possible along with [her restoration] plan,' which [plaintiff] did," later that month.  *Id.* ¶ 43.  Plaintiff also submitted a letter from the NYSDEC senior forester who examined the Property in August 2023 in support of her "comprehensive 50-plus-page restoration plan."  *Id.*  City officials advised plaintiff that they would respond to her proposed restoration plan "in about a week."  *Id.* ¶ 46.

On March 15, 2024, nearly two months after plaintiff submitted her plan, the City responded by e-mail, informing her that she would be required to plant five Canadian Hemlock trees in the Buffer.  Compl. ¶ 47.  But, by that time, plaintiff had already purchased and planted three Austrian pine trees in the Buffer—in accordance with her plan and based on guidance from the NYSDEC senior forester, who had indicated that the species would be resistant to Oriental Bittersweet.  *Id.* ¶¶ 44–46.

On August 2, 2024, the City issued another notice of violation against plaintiff for removing trees in violation of UDO § 11.1.C.  Compl. ¶ 49.  Plaintiff maintains that her May 2023 tree removal complied with the UDO.  *Id.*  Plaintiff further contends that, under the City's

interpretation of the UDO, several neighboring properties are similarly non-compliant, but have never been cited. *Id.* ¶¶ 50–51. The same day, the City cited plaintiff for two other purported violations, both of which she claims Tannenbaum reported falsely and maliciously. *Id.* ¶¶ 55–58.

The City eventually brought charges against plaintiff in Saratoga Springs City Court in connection with her alleged violations of the UDO. Compl. ¶¶ 61, 95; *see also City of Saratoga Springs v. Suzanne Jagoda*, CR-04054-24 (Saratoga Springs City Ct. 2024).[3] That action remains pending.

## III.   LEGAL STANDARD

District courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.A. § 1331. "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district . . . where such action is pending." 28 U.S.C. § 1441.

Ordinarily, "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). "This duty is not, however, absolute." *Id.* Indeed, "federal courts may decline to exercise their jurisdiction, in otherwise 'exceptional circumstances,' where denying a federal forum would clearly serve an important countervailing interest." *Id.* (internal citation omitted). For example, courts may decline to exercise their jurisdiction "where abstention is warranted by considerations of 'proper constitutional adjudication,' 'regard for federal-state relations,' or 'wise judicial

---

[3] The Court takes judicial notice of the City's enforcement action against plaintiff in Saratoga Springs City Court, which is a matter of public record. *See Shmueli v. City of New York*, 424 F.3d 231, 233 (2d Cir. 2005) (taking judicial notice of New York State prosecution of plaintiff).

administration.'" *Id.* (quoting *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 817 (1976)).

## IV. DISCUSSION

Plaintiff argues that the Court should abstain from exercising jurisdiction and remand this action to state court because (1) her claims raise difficult questions of state law that have important state and local policy implications; and (2) adjudicating them would require the Court to interpret a recently enacted local ordinance that state courts have yet to interpret. Dkt. No. 9-1 ("Pl.'s Mem.") at 9–16.[4]  In opposition, the City maintains that plaintiff's action is properly before this Court because plaintiff asserts federal claims, and no exceptional circumstances warrant abstention. Dkt. No. 10-2 ("Def.'s Opp.") at 6, 10–15.

Plaintiff enumerates four "causes of action" in her complaint. Compl. ¶¶ 66–110. She asserts two federal claims, a § 1983 selective enforcement claim and a related § 1988 claim for attorney's fees, and two state law claims. *Id.* ¶¶ 88–110. Plaintiff's state law claims are primarily characterized in terms of the relief sought, rather than the statutory or common law right to be vindicated. *Id.* ¶¶ 66–87. Specifically, plaintiff asserts a "Declaratory Judgment" claim pursuant to New York Civil Practice Law and Rules ("CPLR") § 3001 and a "Trespass – Permanent Injunction" claim.

### A. Abstention Doctrine

"'The abstention doctrine comprises a few extraordinary and narrow exceptions to a federal court's duty to exercise its jurisdiction.'" *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Woodford v. Cnty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001)). Under the abstention

---

[4] Pagination to the briefing corresponds to the electronically generated CM/ECF headers.

doctrine, a district court may abstain from hearing, *inter alia*: (1) "cases that would interfere with a pending state criminal proceeding" or "with certain types of state civil proceedings"; (2) "cases in which the resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law"; (3) "cases raising issues 'intimately involved with [the states'] sovereign prerogative,' the proper adjudication of which might be impaired by unsettled questions of state law"; and (4) "cases which are duplicative of a pending state proceeding." *Quackenbush,* 517 U.S. at 716–17 (internal citations omitted).

Plaintiff cites the *Burford* and *Colorado River* abstention doctrines in support of her contention that the Court should abstain from exercising its jurisdiction over this matter and remand it to state court. Pl.'s Mem. at 9–16. The City maintains that remand would be improper, as neither category of abstention doctrine applies. Def.'s Opp. at 10–15.

Further, although plaintiff has not raised the abstention doctrine established by the Supreme Court in *Younger v. Harris*, 401 U.S. 37, 43–45 (1971), the Court addresses it *sua sponte*. *See Bellotti v. Baird*, 428 U.S. 132, 143 n.10 (1976) ("[I]t would appear that abstention may be raised by the court Sua sponte.").

1.  *Younger* **Abstention**

"Though '[i]n the main, federal courts are obliged to decide cases within the scope of federal jurisdiction,' 'there are some classes of cases in which the withholding of authorized equitable relief[,] because of undue interference with state proceedings[,] is the normal thing to do.'" *Gristina v. Merchan*, 131 F.4th 82, 86 (first quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013); and then quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 359 (1989) ("*NOPSI*")), *cert. denied*, No. 25-5221, 2025 WL 2824395 (U.S. Oct. 6, 2025).

"*Younger* exemplifies one class of cases in which federal-court abstention is required: When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution." *Sprint Commc'ns, Inc.*, 571 U.S. at 72. The Supreme Court "has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions." *Id.*

The City has brought a local enforcement action against plaintiff in Saratoga Springs City Court in connection with her alleged violations of the UDO. *See City of Saratoga Springs v. Jagoda*, CR-04054-24 (Saratoga Springs City Ct. 2024); *see also* Def.'s Opp. ("[T]he Plaintiff in this case, Suzanne Jagoda, is a *defendant* in the City Court proceeding, where she is being prosecuted for violating the City's UDO.") (emphasis in original). Throughout the briefings, the parties have characterized the City Court proceeding against plaintiff as both a prosecution and an enforcement action "akin to a criminal proceeding." Def.'s Opp. at 14; *see also* Pl's Mem. at 5 ("[T]his case and the prosecution pending in the Saratoga Springs City Court should be resolved in NYS Supreme Court.").

Regardless of whether the City Court action is criminal prosecution or a civil enforcement proceeding, it falls squarely within the class of proceedings to which *Younger* applies. *See Trainor v. Hernandez*, 431 U.S. 434, 443 (1977) ("[T]he 'more vital consideration of comity' . . . counsel[s] restraint as strongly in the context of [a] pending state civil enforcement action as in the context of a pending criminal proceeding." (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)).

Where an ongoing state proceeding is quasi-criminal in nature, as may be the case here, the Supreme Court has identified three factors for courts to consider prior to invoking *Younger*. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982). In

*Middlesex*, the Supreme Court invoked *Younger* to bar a federal court from hearing a lawyer's challenge to an ongoing state disciplinary proceeding after it determined that there was (1) "an ongoing state judicial proceeding"; (2) that "implicate[d] important state interests"; and (3) provided "an adequate opportunity . . . to raise constitutional challenges." *Id.* at 432.

Subsequent Supreme Court and Second Circuit decisions have clarified that "these conditions '[are] not dispositive; they [are], instead, additional factors appropriately considered by the federal court before invoking *Younger*.'" *Cavanaugh v. Geballe*, 28 F.4th 428, 432 (2d Cir. 2022) (quoting *Sprint Commc'ns, Inc.*, 571 U.S. at 81).

Even so, all three factors counsel in favor of abstention here. The first factor supports abstention because, as discussed *supra*, there is an ongoing state judicial proceeding.

The second factor, whether the ongoing proceeding implicates an important state interest, similarly counsels in favor of abstention. "In determining the substantiality of the state's interest in its proceedings, a court must 'not look narrowly to [the state's] interest in the *outcome* of the particular case,' but rather, to 'the importance of the generic proceedings to the state.'" *Sendlewski v. Town of Southampton*, 734 F. Supp. 586, 591 (E.D.N.Y. 1990) (quoting *NOPSI*, 491 U.S. at 365 (emphasis in original)).

The City initiated the City Court proceeding against plaintiff to enforce local land use regulations. Courts in this circuit routinely recognize this objective as an important state interest. *See, e.g.*, *Novie v. Vill. of Montebello*, 2012 WL 3542222 (S.D.N.Y. Aug. 16, 2012) (collecting cases); *see also Thomas v. Venditto*, 925 F. Supp. 2d 352, 357 (E.D.N.Y. 2013) ("[T]he State has an important interest in regulating zoning and land use.").

The third factor concerns whether plaintiff can raise her constitutional claim in the ongoing state court proceeding. The City argues, in part, that remand would be improper

because plaintiff would be unable to obtain her requested relief in state court.  Def.'s Opp. at 15.  The Court disagrees.

In *Middlesex*, the Supreme Court made clear "that abstention is appropriate where the plaintiff has an 'opportunity to raise and have timely decided by a competent state tribunal' the constitutional claims at issue in the federal suit."  *Spargo v. New York State Comm'n on Jud. Conduct*, 351 F.3d 65, 77 (2d Cir. 2003) (quoting *Middlesex Ethics Comm.*, 457 U.S. at 437).  Importantly, "any uncertainties as to the scope of state proceedings or the availability of state remedies are generally resolved in favor of abstention."  *Spargo*, 351 F.3d at 77–78.  Thus, to avoid abstention, "[a party] must demonstrate that state law bars the effective consideration of constitutional claims."  *Id.* at 78.

The City has not carried its burden.  Under New York law, plaintiff can raise her selective enforcement claim in the City Court proceeding by seeking to dismiss the charges on that basis.  *People v. Goodman*, 290 N.E.2d 139 (N.Y. 1972) (holding defendant could raise selective enforcement in application to dismiss charges in local code enforcement proceeding); *see also People v. Walker*, 744 N.Y.S.2d 285, 286 (N.Y. App. Term. 2002) ("[T]he issue of selective enforcement . . . should be addressed to the court as a motion to dismiss the accusatory instrument on constitutional grounds.").

In sum, all three *Middlesex* factors weigh in favor of abstention.

The City also contends that remand would be improper because the abstention doctrine does not authorize remand where, as here, a plaintiff seeks money damages.  Def.'s Opp. at 10.

In reply, plaintiff has "withdraw[n] her demand for monetary damages," *see* Dkt. No. 12 ("Pl.'s Reply") at 5, leaving only her demands for a declaratory judgment and injunctive relief.[5]

"[I]n cases where the relief being sought is equitable in nature or otherwise discretionary, federal courts not only have the power to stay [an] action based on abstention principles, but can also, in otherwise appropriate circumstances, decline to exercise jurisdiction altogether by either dismissing the suit or remanding it to state court." *Quackenbush*, 517 U.S. at 721.

As it stands, plaintiff's state court complaint demands a judgment declaring that:

> (1) . . . the UDO permits the removal of dead or dying trees and/or as necessary to remove Ornamental [*sic*] Bittersweet; (2) . . . [plaintiff]'s tree removal in May 2023 was permitted under the . . . UDO; (3) . . . the August 2, 2024 Notice of Violation is invalid and unenforceable; and (3) [*sic*] . . . [the City] lacks lawful authority to prevent [plaintiff] from managing invasive species on her property in accordance with the UDO.

Compl. pp. 24. In addition, plaintiff seeks an order permanently enjoining the City from:

> (1) further prosecution of the August 2, 2024 Notice of Violation and/or further prosecution of the tree removal that forms the basis for that Notice of Violation and/or tree removal that is necessary to abate an invasive species entering the . . . Property from other properties; (3) [*sic*] selectively enforcing the UDO in any manner, including, but not limited to, any manner that would prevent or discourage the removal of invasive species, including Oriental Bittersweet; and/or (4) [*sic*] selectively interfering with [plaintiff]'s right to manage her property in accordance with the . . . UDO and sound environmental practices.

*Id.* pp. 24–25.

In sum, plaintiff has filed a civil action demanding only equitable, or otherwise discretionary, relief that would restrain or undermine an ongoing state court prosecution or enforcement proceeding. If the Court were to grant plaintiff's requested relief, "the evil against

---

[5] Plaintiff's request for attorney's fees pursuant to § 1988 does not preclude remand. Compl. ¶¶ 106–10. The Supreme Court has "recognized that the authority of a federal court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief." *Quackenbush*, 517 U.S. at 718. As plaintiff correctly notes, *see* Pl.'s Reply at 5, § 1988 "allows the court, in its discretion, to award attorney fees as part of the cost to the prevailing party in a [§] 1983 action." *Redcross v. Rensselaer Cnty.*, 511 F. Supp. 364, 374 (N.D.N.Y. 1981). Because attorney's fees are a form of discretionary relief, they pose no bar to abstention and remand.

which *Younger* seeks to guard would [necessarily] result." *Kirschner*, 225 F.3d at 238. Accordingly, *Younger* mandates abstention and, in this case, remand to state court. *See Spargo*, 351 F.3d at 74 ("[D]ismissal . . . is mandatory when the requirements for Younger abstention are satisfied.").[6]

### 2. Remaining Abstention Doctrines

Because *Younger* mandates abstention and remand, the Court need not consider the *Burford* or *Colorado River* abstention doctrines. This is not to say that neither would apply. Indeed, "the various abstention doctrines . . . overlap and mix together to form the basis for abstention in particular cases. This is especially true in cases challenging in federal court state attempts to implement local land use policy." *N.E. Mines, Inc. v. Town of Smithtown*, 584 F. Supp. 112, 113 (E.D.N.Y. 1984) (internal quotation omitted); *see also Corcoran v. Ardra Ins. Co., Ltd.*, 657 F. Supp. 1223 (S.D.N.Y. 1987) (abstaining under *Younger*, *Burford*, and *Colorado River*, and remanding to state court); *Colonial Penn Ins. Co. v. Am. Centennial Ins. Co.*, 1992 WL 350838 (S.D.N.Y. Nov. 17, 1992) (abstaining under *Younger* and *Burford*).

## V. CONCLUSION

Therefore, it is

ORDERED that plaintiff's motion to remand (Dkt. No. 9) is GRANTED.

The Clerk of the Court is directed to remand the case to New York State Supreme Court, Saratoga County, and close the file.

**IT IS SO ORDERED.**

Dated: December 18, 2025
Utica, New York.

Anthony J. Brindisi
U.S. District Judge

---

[6] Though there are two narrow exceptions to *Younger*, the party "seeking to avoid *Younger* must affirmatively demonstrate the justification for application of an exception." *Kirschner*, 225 F.3d at 236. The City has not done so, and the Court finds no affirmative indication that either exception applies.